**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| Rory Stroklund, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER GRANTING DEFENDANT'S** |
| vs. | ) | **MOTION TO COMPEL ARBITRATION** |
| | ) | |
| Nabors Drilling USA, LP, | ) | Case No. 4:10-cv-005 |
| | ) | |
| Defendant. | ) | |

---

Before the Court is the Defendant's motion to compel arbitration filed on February 9, 2010. See Docket No. 3. The Plaintiff filed a response in opposition to the motion on February 17, 2010. See Docket No. 6. The Defendant filed a reply brief on February 24, 2010. See Docket No. 7. For the reasons set forth below, the motion is granted.

## I. BACKGROUND

Plaintiff Rory Stroklund is a resident of Kenmare, North Dakota and a former employee of Defendant Nabors Drilling USA, LP (Nabors Drilling). Nabors Drilling is a limited partnership incorporated under the laws of the state of Delaware and doing business in Williston, North Dakota. In April 2008, Stroklund began employment with Nabors Drilling. Stroklund's employment relationship with Nabors Drilling was governed by the "Nabors Dispute Resolution Program" (Program), which provided that in the event of a dispute between Stroklund and Nabors Drilling, the matter would be submitted to an arbitrator. See Docket No. 3-1. On March 31, 2008, Stroklund, by signing an employee acknowledgement form, acknowledged that he would be required "to adhere to the Dispute Resolution Program and its requirement for submission of disputes to a process that may include mediation and/or arbitration." See Docket No. 3-1, p. 21. Paragraph 2E of the Program defines a "dispute," in relevant part, as follows:

> "Dispute" means all legal and equitable claims, demands, and controversies, of whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law, between persons bound by the Program or by an agreement to resolve Disputes under the Program, or between a person bound by the Program and a person or entity otherwise entitled to its benefits, including, but not limited to, any matters with respect to:
>
> 1. this Program;
>
> 2. the employment or potential reemployment of an Employee, including the terms, conditions, or termination of such employment with the Company;
>
> 3. employee benefits or incidents of employment with the Company;
>
> 4. any other matter related to or concerning the relationship between the Employee and the Company including, by way of example and without limitation, allegations of: discrimination based on race, sex, religion, national origin, age, veteran status or disability; sexual or other kinds of harassment; workers' compensation retaliation; defamation; infliction of emotional distress, antitrust claim concerning wages or otherwise, or status, claim or membership with regard to any employee benefit plan[.]

See Docket No. 3-1, pp. 4-5.

On or about December 21, 2008, Stroklund suffered a non-work related injury and argues that, pursuant to his physician's recommendation, he sought a reasonable accommodation to continue working. Nabors Drilling denies that Stroklund sought accommodation. On March 28, 2009, Stroklund contacted Nabors Drilling about returning to work and was notified that his medical leave of absence had expired. In a letter dated April 8, 2009, Nabors Drilling informed Stroklund that he had exceeded his leave and his employment had been terminated as of March 23, 2009.

On January 12, 2010, Stroklund filed a complaint in Williams County District Court. Stroklund alleges that he suffered "an adverse employment action when he was denied a reasonable accommodation after injuring his hand and [was] involuntarily terminated at the expiration of his medical leave of absence," in violation of the North Dakota Human Rights Act, N.D.C.C. ch. 14-02.4. See Docket No. 1-1. On February 5, 2010, Nabors Drilling removed the action to federal court pursuant

to 28 U.S.C. §§ 1441 and 1446. See Docket No. 1. On February 9, 2010, Nabors Drilling filed a motion to compel arbitration. See Docket No. 3. Nabors Drilling argues that when Stroklund accepted employment and signed the employee acknowledgement form, he agreed to the terms of the Program.

## II. LEGAL DISCUSSION

The Federal Arbitration Act (FAA) makes all agreements to arbitrate "valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original). It is well-established that federal courts are to interpret arbitration clauses liberally and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Barker v. Golf U.S.A., Inc., 154 F.3d 788, 793 (8th Cir. 1998).

In the present case, Stroklund signed an "Employee Acknowledgement Concerning Nabors Dispute Resolution Program," in which he agreed to submit to arbitration. See Docket No. 3-1, p. 21. Stroklund argues that because Nabors Drilling had superior bargaining power the arbitration agreement is an adhesion contract and is unenforceable. Stroklund further argues that the contract was one of adhesion because the "agreement was offered to [him] on a 'take it or leave it basis,' as he was required to sign the acknowledgement before he could begin employment at Nabors." See Docket No. 6. Stroklund also contends that he was not provided an explanation of the acknowledgement and had only limited time to review the documents prior to signing. Although Stroklund read the acknowledgement, he argues that he has no legal training and no education beyond trade school training in diesel technology, and that he understood the agreement to apply only to internal disputes among employees.

The North Dakota Supreme Court has defined an adhesion contract as "one drafted by experts in the subject matter of the contract and offered on a 'take it or leave it' basis." Strand v. U.S. Bank

Nat'l Ass'n ND, 693 N.W.2d 918, 924 (N.D. 2005). "The party who drafts such a contract of adhesion bears the responsibility of assuring that the provisions of the contract are not so one-sided as to be unconscionable." Id. at 925. "Unconscionability is a doctrine which allows courts to deny enforcement of a contract because of procedural abuses arising out of the contract's formation and substantive abuses relating to the terms of the contract." Id. at 921 (citing Weber v. Weber, 589 N.W.2d 358, 361 (N.D. 1999)).

The court in Strand set forth a two-prong test to assess unconscionability. The first prong requires that there be "procedural unconscionability, which encompasses factors relating to unfair surprise, oppression, and inequality of bargaining power," and the second prong is "substantive unconscionability, which focuses upon the harshness or one-sidedness of the contractual provision in question." Id. at 922. In order to show that a contract is unconscionable there must be a showing of both procedural and substantive unconscionability when the contract was made. Id. at 924. Courts are required to balance various factors under a totality of the circumstances in determining whether a contract is so one-sided as to be unconscionable. Rutherford v. BNSF Ry. Co., 765 N.W.2d 705, 714 (N.D. 2009).

To establish procedural unconscionability, it is necessary to determine whether the party had a choice about whether and how to enter into the transaction. Strand, 693 N.W.2d at 923 (citing 8 Richard A. Lord, Williston on Contracts § 18.10 (4th ed. 1998)). When addressing procedural unconscionability, the court is to consider factors relating to unfair surprise, oppression, and inequality of bargaining power. Classic examples of procedural unconscionability are pre-printed standard form contracts, lack of negotiation of terms, and a "take it or leave it" transaction. Strand, 693 N.W.2d at 924.

Stroklund argues that the arbitration agreement was procedurally unconscionable because he signed the contract on a "take it or leave it" basis. There is little dispute that Nabors Drilling had

bargaining power over Stroklund and that Nabors Drilling dictated the terms of the pre-printed contract. There was virtually no negotiation regarding the contract provisions and Stroklund would not have been given the job had he not signed the contract. Stroklund also contends that he was not aware of what he was signing and did not receive a detailed explanation of the Program. However, as the North Dakota Supreme Court stated in David v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 440 N.W.2d 269, 274 (N.D. 1989), "[a] person having the capacity and opportunity to read a contract and who is not misled as to its contents cannot avoid the contract." Therefore, Stroklund's argument that he was not provided any explanation regarding the arbitration agreement fails. "Mere inequality in bargaining power . . . is not enough by itself to overcome the federal policy favoring arbitration." Faber v. Menard, Inc., 367 F.3d 1048, 1052 (8th Cir. 2004) (citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991)). In the present case, as in Strand where the plaintiff signed a pre-printed contract on a "take it or leave it" basis, procedural unconscionability is established.

Stroklund also argues that the agreement is substantively unconscionable because enforcement of the agreement would leave him without an effective remedy. The North Dakota Supreme Court has found contractual provisions substantively unconscionable which limit or exclude other remedies available at law and which leave the plaintiff without an effective remedy. Strand, 693 N.W.2d at 926. However, Stroklund would not be left without an effective remedy by resolving the issue with Nabors Drilling through arbitration. Stroklund also asserts that by proceeding with arbitration he will forgo his rights, however, "'[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'" Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943, 946 (8th Cir. 2001) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985)).

When there exists an express agreement to arbitrate, it is presumed that the parties agreed to submit disputes to arbitration unless there is a clear intent that the parties did not want to arbitrate the

matter. Teamsters Local Union No. 688 v. Indus. Wire Prods., Inc., 186 F.3d 878, 881 (8th Cir. 1999). Paragraph 4 of the Program expressly provides that the resolution of disputes "not otherwise settled by the Parties shall be finally and conclusively resolved under this Program and the Rules." See Docket No. 3-1, p. 7. The Court finds that the arbitration agreement at issue in this dispute is not substantively unconscionable.

The Court expressly finds that this employment dispute is appropriate for arbitration under the broad language of the Program. The arbitration agreement in the Dispute Resolution Program is not an adhesion contract. It is clear that any controversies arising out of or relating to employment are arbitrable. More important, when there is an express agreement to arbitrate, there is a presumption that the parties agreed to submit the dispute to arbitration absent a clear intent to the contrary. Any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration, as "[t]here is nothing inherently unfair or oppressive about arbitration clauses." David, 440 N.W.2d at 274. The Federal Arbitration Act requires a district court to stay proceedings if the court is "satisfied that the issue involved in such suit or proceeding is referable to arbitration." 9 U.S.C. § 3.

## III. CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Defendant's motion to compel arbitration (Docket No. 3). This action is stayed pending arbitration.

**IT IS SO ORDERED**.

Dated this 13th day of July, 2010.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court